CASE 98—PETITION ORDINARY—MAY 27.

## Helton, Etc. v. Asher, Etc.

APPEAL FROM HARLAN CIRCUIT COURT.

1. DEEDS—EFFECT OF FAILURE TO SIGN.—A deed in the usual form, but not signed by the grantor, is not valid, even though acknowledged by him; and the record of such an unsigned deed is not admissible as evidence, the clerk having no authority to record an unsigned deed.

2. LOST WRITING—EVIDENCE.—Due execution and genuineness of an alleged lost paper must be shown before secondary evidence is admissible to prove its contents.

3. TRANSACTION WITH DECEDENT—EVIDENCE.—A party to an action can not testify for himself as to conversatons had with the deceased ancestor of the opposite party from whom they derived title by descent to the land in controversy.

4. EVIDENCE.—A surveyor's report filed in an action to which neither the plaintiffs, nor their ancestors were parties, is not competent evidence against them.

N. B. HAYES FOR APPELLANT.

1. The evidence of Parks B. Howard as to the alleged conversation with Robert Helton, deceased, was incompetent. Civil Code, sec. 606, sub-sections 2 to 6.

2. The so-called deed relied on by appellees is neither sealed nor signed, and is therefore no deed, and passed no title from Robert Helton. Ky. Statutes, chap. 27, sec. 470; Washburn on Real Property, vol. 3, chap. 4, sec. 2, pages 285 and 286; Plummer v.

Russell, 2 Bibb, 174; Chiles v. Conelly, 2 Dana, 21; Taylor v. Morton, 5 Dana, 365.

3. The clerk's certificate to the effect that Helton appeared before him and acknowledged the deed to be his act and deed creates no presumption in favor of the execution and signing thereof by Helton, when the deed itself shows that he never signed it; it was not a recordable instrument, and the act of the clerk in recording it was void and creates no presumption in its favor. Harper v. Barsh, 10 Richardson, 149; Meighim v. Strong, 6 Minn., 177; A. & E. Enc. of Law, vol. 1, page 439; Davidson v. Morrison, 86 Ky., 397.

4. It is not shown that the alleged lost title bond was ever signed or executed by Robert Helton, and therefore the evidence as to its contents was inadmissible.

HOLT & HOLT ON SAME SIDE.

1. A paper in the form of a deed is not in fact a deed until it is signed, and the certificate of the clerk as to its acknowledgment creates no presumption that it was signed. 1st M. & B. Statutes, page 734; 1st Revised Statutes, page 264.

2. Neither the execution of the alleged title bond or its genuineness, or its loss, were shown, and the secondary evidence as to its contents was therefore inadmissible.

W. S. PRYOR AND C. P. CHENAULT FOR APPELLEES.

1. The evidence of Parks B. Howard as to the conversation with the deceased, Helton, before his death could not be prejudicial to appellants, for the same statements of Helton in substance are proven by other disinterested witnesses, and there was no attempt to rebut them.

2. Ordinarily if one attaches his name, or causes the same to be attached, to a writing, by any of the known modes of impressing his name upon paper with the intention of signing it, he will be regarded as having signed the paper, although he has not subscribed his name to it. Ballard's Ky. Real Estate Statutes, sec. 84 and notes; Waterman on Specific Performance, sec. 240; Chitty on Contracts, 11 Am. Ed., 459 and note; 3 Green, (Iowa), 430; 82 Ind., 316; Bartlett v. Drake, 100 Mass., 175.

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

In 1845 there was issued to Robert Helton a patent for 450 acres of land on Straight Creek, Harlan county, Ky. The patentee was the ancestor of the appellants. He died in 1883 or 1884. The appellants claim that they inherited the land from their father and seek to recover damages for alleged trespass upon it. The appellee, Parks B. Howard, claims the land and the appellee, Asher, claims certain timber on it, under a contract with Howard. It is conceded that Robert Helton acquired title to the land by virtue of his patent from the Commonwealth of Kentucky. The appellees seek to show that Robert Helton in his life time divested himself of the title to the land by a conveyance of it to one Z. B. Saylor, and that therefore the land did not descend to the plaintiffs. To establish the fact that Robert Helton had conveyed the land to Saylor, they offered in evidence a record book of deeds of Harlan county, in which was recorded a instrument called a deed from Robert Helton to Saylor. It is in the usual form of a deed in which Robert Helton is called the party of the first part and Z. B. Saylor party of the second part, and it appears not to have been signed by Helton. There is a certificate recorded with it which purports to be a certificate of one John G. Crump, clerk of the Harlan county court. The certificate · recites that "the deed from Robert Helton to Z. B. Saylor was this day produced to me in my office and acknowledged by Robert Helton to be his act and deed." The instrument and the clerk's certificate bear date March 3, 1851. The instrument is concluded in words as follows: "Given under my hand the day and

date above written." But, as we have said, Helton's sig-
nature does not follow this language, nor does it appear
that his name was signed at any other place. The stat-
ute of frauds was then in force. The first section of that
statute provided, "that no action shall be brought . . . .
upon any contract for the sale of lands, tenements or here-
ditaments . . . . unless the promise or agreement upon
which such action shall be brought, or some memorandum
or note thereof shall be in writing and signed by the party
to be charged therewith, or some other person by him
thereunto lawfully authorized. Morehead and Brown's
Statutes, vol. 1, page 734.

The instrument in question was invalid. The certi-
ficate of the clerk could not impart any validity to it. It
was essential to its validity that it should have been
signed by Helton. Had it been signed by him and acknow-
ledged before the clerk, then it would have been a record-
able instrument. To enable the clerk to record the . . . .
instrument it was just as essential that it should have
been signed by him as it was for him to have acknowledged
it before the clerk. As the paper was not properly on
record the copy of it offered was inadmissible as evidence.
Had it not been invalid and inadmissible as evidence
for the reason we have given, then the court should
have sustained the appellant's motion to exclude it from
the jury, because the calls in it did not embrace the land
in controversy. This was proven to be true by the ap-
pellee, Howard, and the surveyor who was introduced
as a witness by the appellants.

The appellees seem to have felt that the paper did

not divest Robert Helton of his title to the land, for they
endeavored to show that he had executed and delivered
to Saylor a title bond for the land. They seek to do this
in part by the evidence of B. F. Howard. He testified
that six or seven years after the close of the late Civil
War, in looking among the papers of his father, he found
a patent which the Commonwealth had granted to Robert
Helton, and also a title bond which purported to be from
Robert Helton to Z. B. Saylor for the land in controversy.
He said in his examination in chief that he thought the
title bond described the same tract of land which was
described in the patent; that he did not know whether
or not Helton had signed it, nor was he acquainted with
his handwriting; that he did not know of his father hav-
ing any interest in the land; that he threw the title bond
among his father's papers and paid no further attention
to it. Whilst he expressed the opinion on his examina-
tion in chief that the title bond embraced the same land
described in the patent, still on cross examination he said
he thought the calls in the unsigned deed were the same;
yet the uncontradicted testimony in the record shows
the calls in the unsigned deed and the patent were so
widely different, that the calls of the deed did not embrace
the land described in the patent. This testimony was
not competent. (1.) Because he did not prove that Hel-
ton had written or signed the title bond. (2.) Because
he did not prove that the signature to the bond was in the
handwriting of Helton. He said he was not familiar with
his handwriting. (3.) Because it does not make it clear
that the land described in the title bond was the land

in controversy, and the court should have excluded his testimony from the jury.

(1.) Due execution and genuineness of an alleged lost paper must be shown before secondary evidence is admissible to prove its contents. (2.) That the paper is lost and can not be found. Elwell v. Cunningham, 74 Maine, 127; Kerney v. New York, 92 New York, 611.

In M'Intire, &c. v. Funk's Heirs, Littell's Selected Cases, 427, the court was considering the question of proving the contents of the title bond which was claimed to be lost and said: "Before such evidence could be admitted, the execution of the bond should be proved by competent proof."

In view of the fact we have held part of the testimony incompetent upon which the defendants relied to show due execution and genuineness of the alleged lost paper, we forbear to express an opinion as to the sufficiency of the other testimony offered by the appellees to establish that fact. The court can hear what testimony the defendants may offer in relation to that matter as well as to the loss of the alleged paper, and the court can determine whether the evidence is sufficient to authorize it to submit to the jury under proper instruction, the questions as to the execution and delivery of the title bond by Helton to Saylor, and as to whether, if such title bond existed, it embraced the land in controversy.

The court permitted the appellee, Parks B. Howard, who claims the land in this suit, to testify as to the conversation which he had with the deceased, Robert Helton. This testimony is clearly inadmissible under sub-section

2, section 606, Civil Code of Practice. It also admitted as evidence a surveyor's report made in a case to which neither the appellants nor their ancestors were parties. Their rights could not be affected by the report of a surveyor made in an action to which they were not parties.

It follows from the view we have expressed in regard to the unsigned deed, that the court erred in instructing the jury with reference thereto.

The judgment is reversed with directions that the appellants be given a new trial, and for proceedings consistent with this opinion.